Good morning, Council. We have 413-0443 and 0448 cases that have been consolidated. And for the appellant, we have Mr. Gomez. And for the affilee, we have Mr. Elitz. Elitz, okay. Council, you may go forward. And E.O.R. Energy LLC. Appellants in this matter. I'd like to, first of all, I'd like to thank the Court for the opportunity to address the oral argument. And the case before you today is an Administrative Review of the Illinois Pollution Control Board Orders. In an Administrative Court of Proceedings, where in the IPCB, which is the abbreviation of the Illinois Pollution Control Board, we ask that motions for summary judgment against my client's AT&T Environmental in the amount of $50,000 and against E.O.R. Energy in the amount of $200,000 for alleged violations of the Illinois Environmental Protection Act, 415-ILCS-5-F7, for alleged illegal hazardous waste disposal. On March 27, 2007, IEPA filed a complaint for the IPCB consisting of five counts. Of those counts, only count one applies to AT&T Environmental, as well as E.O.R., alleging illegal transport into Illinois of a hazardous waste disposal. The other four counts pertain only to E.O.R. Counts two through four are alleging illegal handling and storage, and count five are alleging E.O.R. illegally disposed of the gas and material issue in this case, in its wells and its oil fields located in Sangamon in Christian County, here in Illinois. Crucial to this case is our position that if count five fails and there was no disposal, the entire complaint must fail since disposal is the ultimate requirement for jurisdiction of the Illinois Environmental Protection Agency over a hazardous waste or hazardous material. And we believe in this case count five must fail because the Illinois EPA was prescribed by law from taking action at the type of oil field wells that E.O.R. operates in this case. Counsel, the board rules require that if you want to take issue with the complaint, you take action within 30 days. Did that happen in this case? Did you contest the complaint? Your Honor, I was not retained in this case until after the motion for summary judgment was filed. Well, unfortunately, you have to bring your client's baggage with you today, so when I say you, I'm talking about your client. And from my review of the record, it appears that they did attempt to respond in something that didn't pertain to an attorney. And, in fact, in the motion that you requested to admit, the state makes a point of the fact that the responses submitted by the company without an attorney shouldn't be considered because of the rule that a corporation has to be represented. Well, what I'm getting at is that there was an answer to the complaint filed instead of something contesting the contents of the complaint or the sufficiency of the complaint. An answer was filed. Your Honor, I'm not clear as to exactly what was going through the mind of my client at the time. If I recall, I think the answer was filed by David O'Neill. Well, the point, Justice Holder-White, is getting to is by filing an answer, haven't you forfeited any subsequent claims concerning the alleged deficiency of the pleadings made by the EPA? Your Honor, typically that may be the case. It's our opinion in this case that because it's jurisdiction, subject matter jurisdiction, that issue is raisable at any time, and it doesn't particularly turn on the complaint itself.  So a deficient complaint, you can litigate the whole matter, never raise the alleged deficiency of the complaint, and then turn around appeal and say, by the way, that complaint wasn't good enough to even give you subject matter jurisdiction to proceed? Your Honor, I believe the point here is that it's not the complaint that is the crucial deficiency. It's the fact that the legal framework that powers both the IDNR and the IEPA specifically prohibits this kind of action, so that the IEPA was prohibited from even bringing the complaint in the first place. And you don't have to say anything about that at the lower level? You can raise it for the first time on appeal? On subject matter jurisdiction? Yes. I believe the case law indicates that subject matter jurisdiction can be raised at any time in order for it to be attacked directly or collaterally in an instance where an agency simply doesn't have legal authority to attempt to regulate it in the field that IEPA intended to regulate here. Also, you made reference to the request to admit, and you seem to have raised various factual issues in your appeal here, but once the Board deemed those requests to admit admitted, doesn't that resolve the factual issues you've attempted to raise? Well, when you examine a request to admit, for some reason they were pleaded the alternative. So one request to admit would say EOR paid for a ship. The next request in the same set would say that ADT paid for the ship. Well, you're right that there are some inconsistencies in this, but there were lots of requests to admit, and you seem to be challenging some of the admissions where there aren't any inconsistencies. Essentially, you're ignoring all the requests to admit that were deemed admitted, aren't you? They don't actually offer me honors. The fact that the requests to admit were deemed are in conflict with each other, that alone raises a material issue of dispute that would preclude most of the summary judgment. So your client should benefit from failing to follow proper procedure and actually respond appropriately? No, Your Honor, and that's not where we're pressing here. The only point we're pressing is that under the law, the complaints have never been filed, and my clients have never been subjected to jeopardy of being penalized for their actions. These procedural missteps. And, you know, we'll admit they didn't hire an attorney promptly like they should have necessarily. They did try to get counsel. They did respond on their own. They didn't entirely ignore the action. The action was performed sufficiently for the purpose of the IPCB. And the overarching statutory provision that I think the court would focus on to resolve this case is 40 CFR 147.701. That is the federal rule that authorizes the IDNR to regulate what are called class II wells, which are oil and gas-related injection wells. There's four other classes or five other classes of wells, which are regulated by the IDPA, pursuant to 40 CFR 147.700, which appears immediately before 701. In those two provisions, it's specifically provided that the authorization for each of the entities here, incorporates, by reference, the other entities' statutes. So, for purposes of IDNR, point 701 provides that the IDNR is not only enforcing the Safe Drinking Water Act, but is also enforcing the Illinois Environmental Protection Act at class II wells. So, IDNR has been given the entire jurisdiction over the class II wells to the exclusion of IEPA. And when you look at 40 CFR 147.700, that provision gives IEPA the power to enforce the Safe Drinking Water Act at the other classes of wells. So, each agency's permits contain all the regulatory requirements that need to be applied to its wells for both the Safe Drinking Water Act and RFRA. So, by exclusion, there's no need for IEPA to come in and regulate here. These are permitted wells. IDNR sent an inspector out to the facility to check out IEPA's situation and found no violations. In our opinion, at that point, the matter should have been dropped. But doesn't it turn on the fact that we're dealing with hazardous waste here? Well, that isn't a point of fact of all the facts in this case that I would urge the court to look at one particular document. And that's the Grand Junction Fire Department report. We have that. It's part of the record. And when you look at that report, that report was certified by the Grand Junction Fire Department. It's self-authenticating and should be given great weight and credibility because of the fact that it was certified and was also compiled by expert first responders who are not used to responding to situations like this. And in that document, the Grand Junction Fire Department refers to the material as, quote, fueling product, unquote. And when you read it, it is complicated. Well, what happened at Ruxbury Wheels was they had an acid, a vat of acid, commercially produced. It has an MSDS. I think Auto Tech was the manufacturer. That they used to dip a rim into prior to it being chrome-plated to clean off the rim. So this was an industrial strengthening solution that tends, when it gets very hot, to overheat and start to react. I believe the temperature in our Grand Junction that day was 100 degrees. I don't have the evidence, but it was very hot according to the Fire Department report. In fact, the reason that the event occurred was because of an act of God in overheating of a product. There are boxes to check in that document if the material was a hazardous waste. They're not checked. The Grand Junction Fire Department determined that it was a product. And it's conclusive. There's no remaining evidence anywhere on the record of that assertion. At that point, there's no regulation at all by IEPA over the material. Is there anything in the request to admit that would address that issue, counsel? I'm sorry, request the issue of? Whether or not this was hazardous waste. You're saying that they didn't check that box, but what about the request to admit? I can't remember the exact term that was used, but the documents that were prepared when you were attempting to ship to various places. Right. I believe in the request to admit, they pleaded it both ways. They had one set that is our version of the story, which was an acid product that was used to acidize oil wells consistent with the Class II permit. There's other RTAs in there that say the opposite. And our point is that the very fact that the state didn't select certain RTAs to be admitted, it set itself up with a material conflict of potential material facts that alone should preclude motion for summary judgment being granted. But stepping back from that, it's our opinion that the complaints have never been filed, and the issues aren't necessarily the specific facts of the case, other than, for the record, there was no harm done to the environment from the activities of EOR and AET. AET, United States Owned Feedings, divested itself of control of the material prior to the material ever leaving Colorado. And then EOR was inspected pursuant to its Class II permit and no violations were found. So again, we think the case is a matter of law and a pure jurisdictional prescription against IEPA from doing anything with the Class II well, because that purely was given to IDNR by federal and state law. And the Illinois EPA Act, Section 415.5-45A, specifically prohibits IEPA from taking action with the Class II well unless it's filed a formal complaint with the IDNR, and IDNR has entirely failed to act. If you look at the record of this case, there is nothing in there indicating that a complaint was ever filed with IDNR under that particular section. And under a Congress Civil Service Commission, 40, build out 3rd, 6th, 15, agencies are required to expressly document their jurisdiction when they're acting in a Class II well. And IEPA entirely failed to do that. So on the record, there is no indication that IEPA ever attempted to or did try to obtain jurisdiction to that particular provision. And with that provision, it's our opinion that that was intended for a situation where hazardous waste was injected into a non-permitted oil well, and after telling IDNR about it and IDNR not doing anything, then the IEPA can step in and enforce the injection of that material into that well. But there is no Class II permit. Other than the overarching issue of jurisdiction under that section, other issues that we'd ask the court to look at is part of the proper pleading of subject matter jurisdiction that Your Honor brought up. And whether or not they properly fed the 545A jurisdiction requirements of the complaint, which we believe they were required to do, because the subject matter is jurisdiction that can be challenged at any time in our community according to the law of the land. So in closing, we would ask the court to look at the regulatory framework here and see it for what it is, which is the actions that IEPA tried to take were duplicative and over-regulation. And by what IEPA did, they're attempting to posit that a Class II well holder has to get a RIPRA permit as well in order to acidize as well. And that clearly is not the law or the practice within the industry. Thank you, Counsel. Any argument for the athlete? Yes, Your Honor, great pleasure to be at peace with the court. I'm here with my assistant, Attorney General Carl Helitz, for both the People and the Police and Control Board. Your Honors, the jurisdiction of the board was invoked by the complaint when the People made an allegation that the act was illegal. That was sufficient to invoke the jurisdiction of the Police and Control Board. If my opponent had a problem with that, the correct thing to do would have been to challenge the complaint, either to say it doesn't state a cause of action, or to argue that there's no jurisdiction. They have 30 days under the board's rule to do that, didn't do that. That's a waiver. He argues he can make the argument that the agency has the jurisdiction, and I suppose that's true. But the jurisdiction at this point in time is established by the fact that he has been awarded summary judgment improperly. The complaint stated a cause of action invoked for its jurisdiction. I think the case really was made at the point in time when they only asked for requests to admit. There's over 120 requests to admit in both companies. They're not all pleading the alternative. A few about who paid for what. That's not just they're not pleading the alternative. Some are contradictory, aren't they? Well, some do say that such-and-such paid for this, such-and-such was given this. Well, for instance, the allegation EOR paid AET for the acid material. Then another allegation EOR paid nothing for the acid material. If there's no response and the answer is then deemed yes, how are we supposed to construe that? Either disregard those two allegations or construe them in favor of my opponent. How about as a matter of practice, counsel, we're making sure the agency doesn't submit mutually contradictory requests to admit? That might be helpful, too. Does anyone actually read these things, or are they just kind of slapped together? I mean, what I just read to you were not, you know, a couple hundred. These are the back-to-back requests to admit. Of course, you see, the problem is sometimes, as you know, if someone doesn't respond, then they're all deemed admitted. I can understand that as a matter of tactics, but I question the wisdom of it, because if they're all deemed admitted, now what, if they're contradictory? Yes, my opponent says take them all and throw them all away, I assume, and there's no reason for that. If these are defective, allegation 128, 129, or 130, or whatever they are, then I think it's reasonable for the court to say, we don't know what to make of that. It doesn't matter very much, but there's overwhelming evidence here, not just in the other allegations and requests to admit, but also in the summary judgment motion, by the way, which EOR did not answer. So, with regard to EOR and the more serious charges that are brought against EOR, all our summary judgment motion, or the people's summary judgment motion had to do, was to make a primary patient case and say, what's going on here? This looks like a violation of the Act. They don't respond with anything. So, your position is they forfeited their objections to your summary judgment motions by not responding before the board? They have not rebutted the motion for summary judgment with any affirmative evidence, and there's nothing here that would allow the board to come to any other conclusions but point back that this company violated the Act in the five counts. Well, aside from the merits, though, I suspect, counsel, you probably have occasion to work with the EPA, and I hope that this matter will be communicated back to them, that when drafting pleadings of this kind, they need to be more careful. So, one summary judgment is established. The arguments about jurisdiction are silly, but there's plenty of evidence here about the jurisdiction. I understand that my opponent says that EOR has exclusive jurisdiction. He's just reading the law. First of all, federal law has nothing to do with this case. The charges here were brought under state law. And so we have state laws and state regulations. There's analogs in federal law, sure, but those are not what they're accused of violating. The Oil and Gas Act is a state statute, and if you were to look at the Oil and Gas Act, you'd see that the disposal of waste on an oil and gas site is regulated by PNR, but that's not what happened here. They weren't disposing of the waste that came from the wells. They were shipping it in from Colorado and disposing it down those wells. If we were to take Mr. Gomez's argument to its logical conclusion, I guess they could set a municipal waste site there, too, right? Because there's no authority by the Pollution Control Board or I suppose EPA to regulate that, because that's the site where there's oil and gas production going on. You can't bring waste to an oil and gas facility and dispose of it there and say we have no obligation under our EPA rules regarding that waste. I guess that makes no sense. There's nothing in the Act, either Act, that would support that contention. It would certainly give them an out, but it just doesn't say that. So, with regard to the Grand Junction Fire Department documentation, it just says it's a commercial product. I have no problem with them saying it's a commercial product. It's been a commercial product at the point in time the Fire Department gets there. It's a 1,500-gallon bag. It certainly wouldn't get there in a 1,500-gallon bag. Obviously, it's been moved out of its original packaging and put into this giant container. I suppose it's not a great surprise that it over-heats when it's stored that way. What's in that material? We know from the analysis that it's highly acidic. It has a pH of below 2.0, meaning that it tends to leak through the containers it's put in. It's very dangerous. It has chromium in it, which is toxic. So, we've got very dangerous, toxic waste in Colorado. They try to move it to a waste facility in Colorado. It's rejected because it's smoking. They try to move it to another facility in Colorado. It's rejected en route. They talk to a third person to try to get rid of the stuff. They say, we're not taking it, but maybe you can put it on a wellhead. Aha! That's what we'll do. We've got a wellhead in Illinois. Franklin County should repair it. So, they ship it here, and they have their employees of the EOR Energy, who are not trained in any of this. That's all set out soon in the request written in. They're trying to figure out a way to get rid of it. They get rid of almost all of it. The inspectors find it. This is just a very fair case of illegal dumping of hazardous waste in Illinois. Some of these guys don't properly grant it. Like I said, with regards to EOR, they didn't resist it, and there was really nothing else for the board to do. And AEP's response to some of these guys was just not very compelling. And with regard to that point, under Illinois regulations, this is contrary to what they argue, under Illinois regulations, it's incumbent upon them to establish that they are using this material to acidize the well. If that's the defense they want to raise, they have to come forward with affirmative evidence of that. And there really is none here. All they've offered the court is that sometimes some people do acidize the well. That doesn't establish that that's what they were doing. The evidence here is overwhelming. Some of these guys don't properly grant it for the people against both companies. And I urge the court to affirm that. Other questions? I don't see any. Thank you. Any rebuttal, counsel? Yes, ma'am. Just in quick order, Your Honor. With regard to the statement that my clients have 30 days to argue subject matter jurisdiction, we have to complain again. We point to cases cited in our briefs which hold that subject matter jurisdiction is challengeable at any time, at any level. Because a court without power is a court that can issue an order that has to be finding this in any situation. So any court that receives a challenge that we believe is obligated to investigate whether the subject matter jurisdiction exists or not. As far as the motion for summary judgment and the failure to respond, it's our opinion that under the standard motion for summary judgment, the conflict in the RTAs immediately sets up material facts of dispute that would prohibit motion for summary judgment. As Mr. Elish just mentioned, there was apparently a great deal of confusion about what was going on at the facility. Asked if the station was a hazardous waste disposal. That is a clear material fact of dispute. So you don't have to say anything about it? You can just remain mute in response to the motion for summary judgment and argue it on appeal? I would have not recommended that. But counsel, it's not you. It's not a question of what you did or didn't do. It's a question of the parties. The parties stood mute in response to the motion for summary judgment and can argue alleged deficiencies now before us for the first time? Your Honor, actually, AET retained me and we did respond to the motion for summary judgment on behalf of AET. What happened is I was retained by AET. EOR hadn't made up its mind apparently yet. The court moved quickly and issued the motion for summary judgment against EOR. But AET fully responded to myself and opposed the motion for summary judgment. And because the laws were intertwined, that alone is enough to be able to put before this court the issue of subject matter jurisdiction on the basis of not having ignored the state motion for summary judgment. As far as the motion for summary judgment establishing jurisdiction, I have never heard of that proposition before. Jurisdiction has to be established on the facts, not on behalf of a court which didn't have jurisdiction in the first place. The motion for summary judgment granted would be void as well. As far as the state versus federal law and federal law being analog, that is entirely incorrect. The federal law is what authorizes both ID&R and IPA to regulate these laws. The federal law provides money to these agencies in matching funds to help fund these programs. You mean because of that, because they provide money, we can just ignore what the state law says on the subject? No, the state law is derived directly from federal law. It's not responsive to my question. But you can't ignore either one, Your Honor. So because federal law, assuming you're correct, that provides money, then we need not concern ourselves with the provisions of what the state law says? No, the federal law actually provides the authorization and... So the state wouldn't have authority to do what it's done in these cases without authorization from Congress? Absolutely not. 40 CFR 147-700 and 701 are implementing regulations without those. What's happening here is both ID&R and IPA are enforcing federal law. So under Justice General Police Powers, the state of Illinois is without authority to deal with problems of pollution and environmental degradation? No, but those are dealt with through the public health laws, not through the environmental protection statutes. The state of Illinois couldn't choose to do it through its environmental laws? Only if it's... I mean, it could if it hasn't authorized... In this instance, Your Honor, the oil and gas law preceded the Safe Drinking Water Act. So the Safe Drinking Water Act adopted that act as federal law here. So they're consistent. They're not at odds. And in fact, in our case, federal and state law are consistent with regards to jurisdiction and the desire not to have the ID&R and IPA have overlapping jurisdiction and require an oil and gas operator to have both a Class 2 permit and a Class 1 permit every time it wants to acidize as well. That's not how the system works in the United States, and I haven't found one case where that's occurred. So I'm not sure if I answered your question, Your Honor. You can't ignore either, but federal law is the source for these state laws and the actions in front of you. And it's not a supremacy or a states' rights issue here. It's just a straight application of jurisdiction from the U.S. EPA and Congress to the various states who are authorized to regulate these matters. As far as the misreleases comment that EOR can do anything, it cannot. ID&R has permits for this facility. Had EOR done what the state claims, ID&R would have enforced the permits if they're obligated to do that. They inspected the facility and they found no problems, which would indicate by inference, as we deserve as the non-moving party in the motion of the summary, the inference has to be that there was no violations for purposes of do I grant summary judgment or not. And in the same way, because of the conflict between was it a product or a waste, again, that conflict is determinative and should preclude motion for summary judgment. But we believe the case is bigger and that this Court can dispose of the case by looking at the state law, 415 ILCS 545A, as well as those implementing regulations, and finding that IPA simply had no jurisdiction in the first place and there is no need to go to the facts. You're out of time, counsel. Thank you. We'll take this matter under advisement. We'll be in recess.